**No. 2887**

**Second Circuit**

———

## WESTCHESTER FIRE INS. CO. ET AL. v. SHREVEPORT PRODUCING AND REFINING CORP.

———

(March 12, 1929. Opinion and Decree.)

———

Alex F. Smith, of Shreveport, attorney for plaintiffs, appellees.

John B. Files, of Shreveport, attorney for defendant, appellant.

WEBB, J. In this action, the plaintiffs, who are various insurance companies, allege that a building, belonging to the Journal Publishing Company, a corporation, on which they carried policies protecting the owners against loss by fire, had been damaged by a fire which resulted from the negligence of the defendant, Shreveport Producing & Refining Corporation; and that the loss or damage to the building had been adjusted with the insured, which had assigned and subrogated its rights as against defendant to plaintiffs, and they prayed for judgment against defendant for the amounts paid by them to the insured with legal interest from demand, and defendant appeals from a judgment in favor of plaintiffs for the amount claimed.

The fire originated in a part of the building which was leased to the S. & L. Service, a corporation, engaged in the business of renting or letting out for hire, automobiles, which maintained on the premises a tank for storage of gasoline to be used in its automobiles, and the fire occurred when the tank was being filled with gasoline from an oil truck of the defendant corporation.

It is conceded that the fire was caused by gasoline vapors coming in contact with the fire in a stove which was maintained by the lessee on the premises, and the theory of plaintiffs' case is that the driver of the truck had overfilled the tank and that the overflow therefrom ran down the sides of the tank and over the floor, causing vapors which had come in contact with the flame; while the theory of the defendant, who denied that the driver of the truck had overfilled the tank, appears to be that the vapor arose from the evaporation of gasoline in the tanks of automobiles stored on the premises, and from gasoline used by the employees in cleaning their hands, which had accumulated in the building due to the building not being sufficiently ventilated, and defendant further urged that the assignment and subrogation made out by the insured, which was signed by its president, was not sufficient in the absence of proof that he had been authorized by the board of directors, and it also urged that it would be inequitable to permit the plaintiffs to recover as against it for losses sustained by them under the contracts of insurance with the insured, plaintiffs having received compensation from the insured to carry the risk.

The evidence established that immediately after the explosion, gasoline which had been ignited was running down the sides of the storage tank and spreading out over the floor, and while the driver of the truck stated that he had not overfilled the tank, he admitted that it was filled to a point where he could see the gasoline bubbling up, and that the explosion occurred at that time, and while the evidence shows that there were automobiles stored

on the premises, and that the workmen used gasoline in cleaning their hands, it was not shown that any of the tanks on the automobiles were open, or that any gasoline had been used by the workmen prior to the explosion, nor was it shown that the building was not properly ventilated, or that fumes from gasoline would accumulate in the building.

We are of the opinion that the evidence conclusively established that the driver of the truck had overfilled the storage tank and that the overflow had run down the sides of the tank and spread out over the floor, and it appearing that the gasoline would thus evaporate rapidly, and it being conceded that the fire was caused from the fumes of gasoline coming in contact with the flame in the stove, it is reasonable to conclude that the fumes which were ignited came from the overflow of gasoline from the storage tank, especially when the evidence to the contrary amounts to nothing more than that the fumes could have come from some other source.

The policies provided for the assignment and subrogation of the rights of the insured to the plaintiffs, and the insured having accepted from the plaintiffs payment for the loss sustained, the formal assignment and subrogation was within the ministerial authority of the president, who was also the general manager of the insured, and did not require any special authorization of the board of directors, and as appellant does not urge the defense that it would be inequitable to permit plaintiffs to recover under the assignment, we presume that the position is abandoned.

The judgment is affirmed.